AO 106 (Rev. 04/10)  Application for a Search Warrant



FILED
U.S. District Court
District of Kansas

JAN 24 2019

Clerk, U.S. District Court
By _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## for the
## District of Kansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with the Facebook username(s)
Facebook.com/addison.lewis.54 (1644243063); Facebook.com/brandi.poulton
(510325649); Facebook.com/(100009236199763) that is stored at premises
owned,, maintained, controlled, or operated by Facebook Inc., a company
headquartered in Menlo Park, California

)
)
)
)
)
)
)

Case No.  19-M-6012-01-KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Information associated with the Facebook username(s)
Facebook.com/addison.lewis.54 (1644243063); Facebook.com/brandi.poulton (510325649); Facebook.com/(100009236199763) that is stored at premises owned,, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California
located in the _____ District of _____Kansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 371 | Conspiracy |
| 18 U.S.C. 641 | Theft of Government Property |
| 18 U.S.C. 2 | Aiding and Abetting |

The application is based on these facts:

See Attached Affidavit
☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO James W. Carmack, SSA OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    01/24/2019

_____
*Judge's signature*

City and state: Wichita, Kansas

Honorable Kenneth G. Gale, U.S. Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Facebook username

Facebook.com/addison.lewis.54 (1644243063)

Facebook.com/brandi.poulton (510325649)

Facebook.com/(100009236199763)

that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a

company headquartered in, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

    (a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

    (c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

    (d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)  All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)  All "check ins" and other location information;

(g)  All IP logs, including all records of the IP addresses that logged into the account;

(h)  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)  All information about the Facebook pages that the account is or was a "fan" of;

(j)  All past and present lists of friends created by the account;

(k)  All records of Facebook searches performed by the account;

(l)  All information about the user's access and use of Facebook Marketplace;

(m)  The types of service utilized by the user;

(n)  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.**      **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and

instrumentalities of violations of conspiracy of 18 U.S.C. § 371 and theft of government property

in violation of 18 U.S.C. § 641 and 2 for each user ID identified on Attachment A, information

pertaining to the following matters:

(a)  All records listed in Section I of this attachment pertaining to violations of 18

U.S.C. § 371 and 18 U.S.C. § 641 and 2;

(b)  Evidence indicating how and when the Facebook account was accessed or used,

to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account

owner;

(c)  Evidence indicating the Facebook account owner's state of mind as it relates to

the crime under investigation ;

(d)  The identity of the person(s) who created or used the user ID, including records

that help reveal the whereabouts of such person(s).

(e)  The identity of the person(s) who communicated with the user ID about matters

relating to violations of 18 U.S.C. § 371 and 18 U.S.C. § 641 and 2, including

records that help reveal their whereabouts.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS



IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
**FACEBOOK USER NAMES:**

**Facebook.com/addison.lewis.54
(1644243063)**

**Facebook.com/brandi.poulton
(510325649)**

**Facebook.com/
(100009236199763)**

THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK INC.

Case No. 19-m-6012-01-KGG

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, James W. Carmack, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  Affiant has been employed as a Special Investigator for the Kansas Department of Labor

    (KDOL), since September 2016.   Affiant is currently assigned to the Social Security

    Administration (SSA), Office of the Inspector General (OIG), Kansas City Division's (KCD),

    Cooperative Disability Investigations Unit (CDI), as a Task Force Officer (TFO). As a SSA,

    OIG, TFO affiant attended the SSA, OIG, Office of Investigations (OI), New Agent & CDI

    training in Baltimore, Maryland in May 2018. Prior to being employed by KDOL, affiant was

    employed as a Court Security Officer (CSO), at the Bob Dole Federal Courthouse in Kansas

    City, Kansas for two years and with the Kansas Bureau of Investigation (KBI), for 25.5 years

    as a Special Agent/Senior Special Agent, working in the areas of Intelligence/Organized

Crime, Pari-mutuel Racing/Legalized Gaming, narcotics and general persons crimes. As part of the KBI's, Field Operations Division (general person's crimes), affiant was assigned to the SSA, OIG, Kansas City CDI Unit as a TFO from 2010-13. As a Special Agent with KBI, affiant has received and provided training in the areas of both legal and illegal gambling and drug trafficking investigations. Affiant also received training in homicides and other general person's related crimes. As a Special Agent and TFO with both the FBI and SSA OIG, affiant has conducted and/or participated in investigations involving fraud, organized crime, illegal gambling, controlled substances and violent crimes. Affiant has utilized confidential informants to obtain information and evidence, conducted numerous interviews of suspects and witnesses, written and executed both federal and state search warrants and arrest warrants. Affiant has conducted and/or participated in investigations resulting in the seizure of contraband, currency, vehicles, and other evidentiary items related to drug and violent crime investigations. Throughout those investigations, I have become familiar with how computers and social media are used throughout the "criminal world". I have become aware that information stored by social media companies on behalf of its subscribers and users can assist law enforcement in criminal investigations.

2. I make this affidavit in support of an application for a search warrant for information associated with certain Facebook usernames that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession,

2

pertaining to the subscriber or customer associated with the user ID's. The information to be disclosed by Facebook is described in Attachment A, which will be searched by law enforcement for the information described in Attachment B.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.


## PROBABLE CAUSE

4.  From speaking with agents and investigators involved in this investigation, from reviewing written reports regarding this investigation, and from my personal involvement in this investigation, affiant knows the following:

    a.  Addison LEWIS (LEWIS) retired from the U.S. Army on 10/06/2013.

    b.  On 10/16/2013, LEWIS filed an initial claim with the SSA, for Title II disability benefits listing Traumatic brain injury (TBI), PTSD, Depression, Memory Loss, Low vision and Anxiety as his illness, injury or condition with an alleged onset date of 08/18/2011. As part of his disability claim, LEWIS submitted a Function Report (Form SSA-3373), dated 10/23/2013, outlining his daily activities, what he was able to do prior to his illness, injury or condition and what is capable of doing now. LEWIS marked the following areas that have been affected by his condition, lifting, squatting, bending, standing, reaching, walking, kneeling, talking, hearing, stair climbing, seeing, memory, concentration, completing tasks, understanding,

3

following instructions, using hands and getting along with others.  LEWIS also marked "**No**," to question 15d, "**Do you drive**?" and wrote, "**vision issues**" as to the explanation why he does not drive.

c.   On 07/07/2014, LEWIS was allowed Title II benefits by SSA for Statutory blindness and Affective (Mood) Disorders.

d.   On 09/30/2015, LEWIS was granted a service connected disability from the United States Department of Veterans Affair (VA), for "cortical visual impairment with legal blindness in each eye," with an evaluation of 100 percent, effective 10/07/2013.

e.   After LEWIS was approved for VA benefits, Brandi Lewis (nee, Brandi Poulton), LEWIS's spouse, applied for and was approved to receive a monthly stipend through the VA Caregiver Support Program as LEWIS's caregiver.  LEWIS had been rated as a "Tier 3" veteran based on Brandi Lewis's statements that LEWIS needed assistance with all daily activities including feeding, ambulating, transferring, bathing, dressing and toileting.

f.   On 08/14/2017, the VA OIG's office obtained verification that LEWIS was issued a valid, Kansas driver's license on 01/25/2017, with an expiration date of 08/2023. Note: K.S.A. 8-295, "Vision standards for driver's licenses," each driver's license examiner shall use the following vision standards for driver's license applicants: (a) each applicant testing 20/40 or better in at least one eye at the examination station shall meet the vision requirements.

g. An additional search through the KDOR, showed LEWIS as the owner of a 1997 Jeep Cherokee and a 2014 Polaris (ATV), as well as an additional owner of a 2012 Chevrolet Camaro and 2015 Honda Pilot.

h. On 08/22/2017, the VA OIG's office interviewed a VA, Caregiver Support Coordinator at the Wichita, Kansas VA Medical Center (VAMC) regarding LEWIS. According to the coordinator, veteran's needs are classified into tiers, with Tier 3 being the highest. LEWIS is rated as a Tier 3.

i. On 08/22/2017, the VA OIG's office interviewed a registered nurse (RN), for the VA's, Home Based Primary Care Division. A portion of the RN's duties is to travel to veterans homes and provide assessments to veterans who are receiving caregiver support. According to the RN, he/she has been to LEWIS's home on more than one occasion. Each time the RN has seen LEWIS he has been wearing dark sunglasses and has been stationary. The RN has never observed LEWIS ambulating. According to the RN, LEWIS and/or Brandi Lewis have reported that LEWIS needs help ambulating in the home. The RN indicated that it was his/her opinion that LEWIS was 100 percent dependent on Brandi Lewis for all activities, to the point that LEWIS could not be left alone.

j. On 08/22/2017, the VA OIG's office conducted a search of social media websites and discovered a message that LEWIS had posted on a Facebook forum titled "Atv/dirtbike fourm Kansas," on 06/30/2016. The message read, "Good afternoon folks. I live in Hutchinson and we were recently subjected to the ATV park closing. I do not know of any trails or areas to ride in. I am looking to go out riding with responsible and respectful people. I have a Polaris ACE. I am looking to make

new riends and enjoy the trails.  Please message me if you or a group have a ride planned.  Thanks folks." LEWIS also posted the following remarks to the responses from other individuals in the forum.  LEWIS posted, "Thanks.  Is the area secure enough to leave a towing vehicle unattended for a few hours without incident" and "That would be great."

k.  On 08/28/2017, LEWIS attended several scheduled appointments at the Wichita VA Medical Center (VAMC).  Brandi Lewis accompanied LEWIS during the exams.  During the exam process, VA OIG agents observed Brandi Lewis guiding LEWIS in and out of the VAMC, as well as inside the facility.

l.  On 08/31/2017, the VA OIG's office initiated an investigation regarding veteran LEWIS, based on a proactive initiative that identified veterans who were receiving Veterans Benefits Administration (VBA) benefits for visual impairments, while possessing a valid driver's license.

m.  On 08/31/2017, the VA OIG's office contacted the KDOR in regards to LEWIS's, Kansas driver's license. According to KDOR's response, in order for an individual to receive a Kansas driver's license, the individual would have to pass the vision exam by reading "line 5," which means the individual's vision is at least 20/40. KDOR also noted there were no restrictions listed on LEWIS's, Kansas driver's license and there was no record that LEWIS wore eyeglasses or contacts during his test.

n.  On 09/02/2017, the SSA OIG's, Cooperative Disability Investigative Unit (CDI), initiated an investigation into LEWIS's initial allowance for Title II, SSA disability benefits based on the VA OIG's initial findings.

6

o. From 09/08/2017 to 10/20/2017, the use of covert electronic surveillance near LEWIS's residence captured images of LEWIS performing the following tasks: driving a motor vehicle; operating a midsized tractor; operating a riding lawnmower and other various activities in his yard.

p. On 09/28/2017, LEWIS attended a compensation and pension (C&P) exam at the Wichita VAMC's Eye Clinic to evaluate the appropriateness of his disability rating. LEWIS was again accompanied by his wife, Brandi Lewis. Brandi Lewis was observed assisting LEWIS in and out of the exam chair and with navigation throughout the clinic.

q. On 01/04/2019, the SSA, CDI Unit conducted an additional online search and identified one Facebook profile for LEWIS and two Facebook profiles for Brandi Lewis. LEWIS's Facebook profile is not viewable to the public, while one of Brandi Lewis's profiles is available to view; the other profile appears to be either old, with no current postings or is also not viewable. A search of the Facebook forum "Atv/dirtbike fourm Kansas," as well as "Save A Fox Foundation (1979-93 Ford Mustang)," for messages posted by LEWIS. LEWIS posted the following messages on the Atv/dirtbike forum on 09/13/2016, along with a photograph of his ATV. The messages read, "Anyone interested in doing some riding in Great Bend in the next few days? I just got the break in service done, and now it is time to check out the capabilities of my ATV." "Yes. I like that it is 48" wide and more trail compliant. The only thing that takes some time is learning the suspension and steering characteristics. The vast majority of the weight is at the rear. Sometimes that makes it difficult to manipulate turns." "Wow. Went riding at the river in Great

7

Bend. There were broken beer bottles everywhere. Boards with nails. People firing rifles despite the "Do not discharge firearms sign". Shotgun shells every where. Homeless people living on the river. What a waste. People cannot act right." "Looking at riders planet for another trail." "I want to. I have to find some time to drive 4 hours one way." "Did you just park at night and camp?"

    r.  LEWIS also posted a picture on "Save A Fox," on 03/25/2013, of his 1993, Ford GT Hatchback with the following message: "93 GT Hatchback. I like the modified stock look. All basic body with a small rise Cobra R hood. Non chalant drag radials on stock rims. Rear seat delete with compartments for my fishing tackle. I really hate not getting my favorite fishing spot." "Oops. Forgot. Paint and body will be complete next week."

5.  On 08/14/2018, a Kansas federal grand jury returned indictments in regards to both Addison and Brandi Lewis for conspiracy in violation of 18 U.S.C. § 371 and theft of government property in violation of 18 U.S.C. § 641 and 2.

6.  On 08/29/2018, Addison and Brandi Lewis surrendered to the United States Marshal's Service in response to a summons issued by the United States District Court for the District of Kansas.

7.  As supported by the facts and circumstances set forth, the affiant believes that probable cause exists that Addison and Brandi Lewis has committed conspiracy and theft of government property.

8.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of conspiracy in violation of 18 U.S.C. § 371 and theft of government property in violation of 18 U.S.C. § 641 and 2 will be found in

"Facebook". The facts in this affidavit come from my personal observations, my training and experience, and information obtained from special agents, other law enforcement officers, and witnesses. From these things, I have learned that:

A.     Individuals use cellular telephones, "smart phones", desktop and notebook computers, and/or other similar electronic devices, to produce and/or display their daily activities, some of which support their illicit activities;

B.     On such devices, these individuals are known to access and post to social media platforms such as Facebook, YouTube, Twitter, Instagram, etc. to promote their daily lifestyle.


## TECHNICAL BACKGROUND RELATING TO FACEBOOK


9.   Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

10.  Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites,

and other personal identifiers.  Facebook also assigns a user identification number to each account.

11. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

12. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

13. Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming

"events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

14. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

15. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and

although Facebook does not record the calls themselves, it does keep records of the date of each call.

16. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

17. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

18. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

19. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

20. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

21. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes,"

which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

22. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

23. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

24. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

25. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

26. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

27. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

28. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact

14

information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

30. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

31. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of conspiracy in violation of 18 U.S.C. § 371 and theft of government property in violation of 18 U.S.C. § 641 and 2, Accordingly, a search warrant is requested.

32. This Court has jurisdiction to issue the request warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C 2711, 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(C)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated."

33. Pursuant to 18 U.S.C. 2703(g), the presence of a law enforcement officer not required for the service or execution of this warrant.

James W. Carmack
SSA OIG Task Force Officer

16

Subscribed and sworn to before me on the 24ᵗʰ day of January 2019:

HONORABLE KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF KANSAS

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Facebook username

Facebook.com/addison.lewis.54 (1644243063)

Facebook.com/brandi.poulton (510325649)

Facebook.com/(100009236199763)

that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a

company headquartered in, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.       Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and
instrumentalities of violations of conspiracy of 18 U.S.C. § 371 and theft of government property
in violation of 18 U.S.C. § 641 and 2 for each user ID identified on Attachment A, information
pertaining to the following matters:

(a) All records listed in Section I of this attachment pertaining to violations of 18
U.S.C. § 371 and 18 U.S.C. § 641 and 2;

(b) Evidence indicating how and when the Facebook account was accessed or used,
to determine the chronological and geographic context of account access, use, and
events relating to the crime under investigation and to the Facebook account
owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to
the crime under investigation ;

(d) The identity of the person(s) who created or used the user ID, including records
that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters
relating to violations of 18 U.S.C. § 371 and 18 U.S.C. § 641 and 2, including
records that help reveal their whereabouts.